UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JEMILA HADI,

       Plaintiff,                      Civil Action No. 3:16-cv-03014
                                              Chief Judge Waverly D. Crenshaw, Jr.
v.                                           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (DE 21) and REMAND THIS MATTER TO THE COMMISSIONER**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for judgment on the administrative record (DE 21) and **REMAND** this matter to the Commissioner of Social Security for re-evaluation of the opinion evidence and the RFC, consistent with this report and recommendation.

**II.    REPORT**

Plaintiff, Jemila Hadi, brings this action under 42 U.S.C. §§ 405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for judgment on the administrative record (DE 21), the Commissioner's response (DE 22), Plaintiff's reply (DE 29), and the administrative record (DE 11).[1]

## A. Background and Administrative History

Plaintiff alleges her disability began on April 4, 2008, at the age of 46. (R. at 158-159.) She lists several physical conditions (knees, neck, shoulder, ear and back problems, as well as diabetes) that limit her ability to work. (R. at 170.) Her application for DI was denied in June 2013. (R. at 70-81, 105-108.) Her request for reconsideration was denied in March 2014. (R. at 82-104, 111-115.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). ALJ Elizabeth P. Neuhoff held a hearing, and, on September 1, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-69, 289-326.) On October 6, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Neuhoff's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 21, 2016.

## B. Plaintiff's Medical History

---

[1] Chief Judge Crenshaw referred this case to Magistrate Judge Alistair Newbern on December 8, 2016. (DE 3.) However, on January 30, 2018, pursuant to an administrative order, the case was assigned to the Undersigned in the Eastern District of Michigan.

The administrative record contains approximately 1,544 pages of medical records, of which Exhibits 1F through 44F were available to the ALJ at the time of the September 1, 2015 decision. (R. at 24, 327-1870.) These records will be discussed in detail, as necessary, below.

### C. Hearing Testimony

Plaintiff testified at the July 16, 2015 hearing, when she was 54 years old. (R. at 39-59, 158.) As Plaintiff is expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will refer to Plaintiff's testimony as necessary below. Vocational expert (VE) Rebecca Williams testified at the hearing, providing answers to several hypotheticals. (R. at 59-68, 241-246.)

### D. The Administrative Decision

On September 1, 2015, ALJ Neuhoff issued a decision. (R. at 7-24.) At **Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged amended onset date of August 1, 2011 through her date last insured (DLI) of December 31, 2013. (R. at 12.) At **Step 2**, the ALJ found that, through the DLI, Plaintiff had the following severe impairments: thyroid disorder status post total thyroidectomy in 2014, back disorder, and bilateral knee degenerative joint disease status post right arthropathy in 2007. (R. at 12-14.) She also noted the Plaintiff's claims of

---

[2] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

diabetes mellitus, goiter, hearing loss, obesity and migraines, and did not find these to be severe. (R. at 14.) At **Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 14-15.) Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that, through the DLI, Plaintiff had the RFC:

> . . . to perform medium work as defined in 20 CFR 404.1567(c) except can lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand and walk for a total of six hours each of an eight-hour work day; cannot push/pull pounds more than ten with her right upper extremity; can occasionally push/pull with her left upper extremity [*i.e. exertional limitations*]; can occasionally climb ladders, ropes or scaffolds and crawl; can frequently climb stairs, balance, stoop, kneel, crouch [*i.e. postural limitations*]; cannot perform work that requires bilateral hearing such as phone work; and cannot perform work requiring reading and writing as part of regular job duties (such as completing forms or other paperwork) on a regular basis secondary to language barrier [*i.e. communicative limitations*].

(R. at 15-18.) At **Step 4**, the ALJ determined that, through the DLI, Plaintiff was capable of performing past relevant work (PRW) as an appliance assembler and production assembler, as this work did not require the performance of work-related activities precluded by her RFC. (R. at 18.) The ALJ therefore concluded that

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from April 4, 2008, the alleged onset date, through December 31, 2013, the DLI. (*Id.*)[4]

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting

---

[4] The Court suspects this is a typographical error, as it lists the original onset date and not the amended onset date.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

    Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner

6
Case 3:16-cv-03014    Document 30    Filed 03/27/18    Page 6 of 17 PageID #: 2336

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis

#### 1. Issues presented

Plaintiff's brief contains a lengthy statement of the facts, within which she asserts that, per the VE's testimony, "the limitations set forth in the RFC assessments of either NP Bolton / Dr. Attoussi or Dr. Surber would preclude performance of Ms. Hadi's PRW." (DE 21-1 at 1-31.) Thereafter, she makes the following, express arguments:

**I.** The ALJ violated the treating physician rule.

**II.** The ALJ also failed to give a single good reason for the weight (*i.e.,* "little"), given to the opinion of Dr. Surber, who unlike either Dr. Settles or Dr. Misra actually examined Ms. Hadi.

> **III.** The ALJ has not given a single good reason for finding Ms. Hadi to be anything less than fully credible.
>
> **IV.** In violation of SSA's "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity" as set forth in SSR 02-1p, the ALJ did not find Ms. Hadi's obesity to be a severe impairment or do an individualized assessment of the impact of her obesity on her ability to function.
>
> **V.** The ALJ's credibility finding is not supported by substantial evidence.
>
> **VI.** The ALJ's finding that Ms. Hadi can perform her past relevant work is not supported by substantial evidence.

(DE 21-1 at 31-40.)[5] The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could perform "a Range of Medium Work[.]" (DE 22 at 5-15.)

### 2. Opinion evidence

The Social Security Administration (SSA) will evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions."). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding

---

[5] Attached to Plaintiff's motion and brief are 74 pages of exhibits, among which are 52 pages of records from Advanced Physical Therapy & Rehab dated October 2013 through December 2013. (DE 21-2.) The notes from at least one of these visits are in the Administrative Record. (R. at 1114-1115.) However, while Plaintiff contends she submitted the Advanced PT records to DDS on or about February 4, 2014, and "does not know why these records were not made a part of the claims file or administrative record[,]" (DE 21-1 at 10), the Court is still unable to consider them in this administrative record review.

the weight we give to any medical opinion[:]" (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id. See also* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996), *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or

9

(3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

### 3. Jerry Lee Surber, M.D. (consultative examiner)

Jerry L. Surber, M.D., specializes in emergency medicine. (R. at 264-269.) Dr. Surber performed a consultative examination (CE) on March 7, 2013, which resulted in several clinical impressions: (1) possible left-sided hearing loss; (2) hypothyroidism; (3) obesity; (4) adult-onset diabetes mellitus for which the patient also takes prescribed medications; (5) pain worse in cold or rainy weather accompanied by stiffness and fatigue; and (6) treatment with prescribed muscle relaxants. (R. at 571-572.) Dr. Surber's "assessment and plan" was as follows:

> Based on this patient physical examination today and review of her available medical records, the patient would be able to occasionally lift or carry 10 to 30 pounds provided she do that with her non-dominant left hand during one-third to one-half of an eight-hour workday or frequently lift or carry 10 to 15 pounds with her left hand during one-third to one-half of an eight-hour workday. She would be able to stand and walk for two to four hours or sit for six to eight hours. These impairments related physical limitations will interfere with some types of job descriptions.

10
Case 3:16-cv-03014   Document 30   Filed 03/27/18   Page 10 of 17 PageID #: 2340

(R. at 572.)

Each time the ALJ mentioned this report, she acknowledged it was a consultative examination. (R. at 14, 17.) Thus, the ALJ considered the examining relationship (simultaneously recognizing the lack of a treatment relationship). 20 C.F.R. § 404.1527(c)(1),(2). The ALJ expressly cited Dr. Surber's report at Step 2, noting, inter alia, that Plaintiff "exhibited *full range of motion* . . . ." (R. at 14 (emphasis added).) Then, within the RFC determination, the ALJ assigned "little weight" to this opinion and explained:

> [It] is not consistent with his observations *at the hearing* that she had bilaterally equal upper and lower limb strengths and grip strength of five out of five. While he found decreased range of motion of her right shoulder, she had full mobility of her elbows, wrists, hands, fingers, hips and knees. Exhibit 13F. *His objective findings did not substantiate the limitations he gave*.

(R. at 17-18 (emphases added).)

Plaintiff generally argues that the ALJ did not give a "single good reason" for the "little weight" assigned to Dr. Surber's opinion. (DE 21-1 at 36-37.) However, under the applicable regulation, the ALJ did not need to, as "the SSA requires ALJs to give reasons for only *treating* sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original). As to Plaintiff's more specific arguments, I agree with her that Dr. Surber "is the medical expert," not the ALJ. (DE 21-1 at 37.) Nonetheless, use of the phrase "at the hearing" seems to be mistaken, as the hearing transcript index makes clear that Dr. Surber

did not testify (R. at 27), and the reference to "his observations" does not likely point to the ALJ *herself*. Instead, this strange and otherwise unexplainable reference hopefully indicates that the ALJ was comparing Dr. Surber's own "neurological" and "musculoskeletal / extremities findings," (R. at 571), with his "assessment and plan," (R. at 572).[6] If it has any other meaning – for example, that the ALJ was mistakenly considering testimony given by Dr. Surber at a hearing in another case – it is quite troubling, because on the face of her opinion, the ALJ is discounting Dr. Surber on the basis of a perceived inconsistency between his testimony (which is nonexistent here) and his written record. This latter scenario being so illogical, the former "mistake" scenario is more likely.

Still, even more disconcerting here is the discounting of Dr. Surber's CE report for its *apparent* internal inconsistency, which is less susceptible to being explained away. 20 C.F.R. §§ 404.1527(c)(4). At Step 2, the ALJ interpreted Dr. Surber's report as exhibiting "full range of motion . . . ." (R. at 14.) Yet, Plaintiff seems to be correct that she "had limited cervical spine, lumbar spine[,] [and] shoulder range of motion in nearly all spheres[,]" at the time of the CE examination. (DE 21-1 at 37; R. at 570-571.) The administrative record contains a State of Tennessee DDS "range of motion" chart, which lists normal ranges of motion for the cervical spine, dorsolumbar spine, shoulder, elbow, hip, knee, ankle

---

[6] The Commissioner makes a similar interpretation of the ALJ's decision in this area. (DE 22 at 7-8.)

and wrist. (R. at 287-288.) When these percentages are compared with Dr. Surber's neck and musculoskeletal / extremities examinations (R. at 570-571), it is clear that Plaintiff had *reduced* range of motion in all measured areas of the cervical spine, in some measured areas of the dorsolumbar spine, in all measured areas of the right shoulder, and in the external rotation of the left shoulder. (*See also* DE 21-8, DE 29-3 at 7-8.) In addition, the October 29, 2013 physical therapy notes seem to indicate that she was being evaluated for, *inter alia*, "Range of Motion: Spine: Pre-Treatment: Active Lumbosacral." (R. at 21-1 at 10, R. at 1114.) Admittedly, this was not the only problem under evaluation; nevertheless, Plaintiff "was instructed in the independent performance of a home exercise program . . .[,]" and the "Therapeutic Contents" section of the "Plan" includes "Active Assistive Range of Motion Activities," "Active Range of Motion Activities[,]" and "Manual Range of Motion Activities," among others. (R. at 1115.)

True, within the RFC determination, the ALJ accurately acknowledged the CE report's representation that Plaintiff had "decreased range of motion of her right shoulder," as well as full range of motion in her elbows, hips, knees, wrists, hands, and fingers. (R. at 17-18, 571.) Accordingly, the RFC provides restrictions

on the right upper extremity.[7] Thus, even though Plaintiff contends that the ALJ "did not attribute any functional significance to [the right shoulder] finding[,]" (DE 29 at 4), the ALJ "cured" his earlier misstatement about shoulder range of motion; however, the ALJ did <u>not</u> do the same for the misstatement about the cervical and dorsolumbar spine ROM. This mistake undermines the ALJ's statement that Dr. Surber's "objective findings did not substantiate the limitations he gave." (R. at 18.)

In sum, the Court should find that: **(a)** Dr. Surber assessed reduced range of motion in the cervical spine, dorsolumbar spine and shoulder (R. at 287-288, 570-571); **(b)** the ALJ mistakenly interpreted "full range of motion" at Step 2 (R. at 14); **(c)** the ALJ at least somewhat cured this error as to the right shoulder within the RFC discussion and by instituting restrictions with regard to the right upper extremity (R. at 15, 17-18); but, **(d)** it is not clear whether the RFC accommodates the reduced spinal range of motion. In a sense, as Plaintiff states, the ALJ's findings "regarding Ms. Hadi's ranges of motion are inexplicable." (DE 29 at 4). (*See also* DE 29 at 9.) The Court acknowledges that the state agency medical

---

[7] The RFC heading provides that Plaintiff "cannot push/pull pounds *more than ten* with her right upper extremity[.]" (R. at 15) (emphasis added). By comparison, related RFC discussion provides for "*no* pushing/pulling with her right arm due to decreased mobility in her right shoulder[.]" (R. at 17) (emphasis added). This discrepancy, in and of itself, does not appear to be harmful error, as the VE actually testified regarding the condition of "no pushing or pulling with the right upper extremity, over ten pounds[.]" (R. at 60.)

consultants found that Dr. Surber's report was "not supported by the objective medical data in the file or by an exam with normal strength[,]" (R. at 77-79, 100-101), and further acknowledges that Defendant points to several places in the overall treatment record (purportedly including the treatment notes of Bolton and Dr. Attoussi) where "full ranges of motion" and other normal findings are indicated. (*See* DE 22 at 9, 10, 13); however, these do not necessarily cure or make harmless the ALJ's errant evaluation of Dr. Surber's consistency and its potential or consequential effect on the weight given to Dr. Surber's opinion. It is the Undersigned's finding and recommendation that this needs to be corrected on remand.

### G. Conclusion

In light of the foregoing conclusion that this matter should be remanded for the ALJ's treatment of Dr. Surber's opinion, the Court need not address the other issues presented in Plaintiff's appeal, such as the challenges to the ALJ's treatment of other opinion evidence, the ALJ's credibility assessment, or the ALJ's obesity evaluation. In sum, for the reasons stated above, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for judgment on the administrative record (DE 21) and **REMAND** this matter to the Commissioner of Social Security for re-evaluation of the opinion evidence and the RFC, consistent with this Report and Recommendation. On remand, in addition to this more general directive, the ALJ

should specifically: (1) correct the above described error with respect to Dr. Surber's findings on range of motion; (2) correct, delete or clarify the reference to Dr. Surber's inconsistent testimony; (3) re-evaluate the weight given to Dr. Surber's opinion; and, (4) reformulate the RFC, as necessary.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

16

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 26, 2018  s/Anthony P. Patti
ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION